IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GLEN EWING, JR., | * |
| Petitioner, | * |
| v. | *   Civil Action No. BAH-22-3029 |
| WARDEN CARTER, | * |
| Respondent. | * |
| | *** |

**MEMORANDUM OPINION**

Glen Ewing, Jr., a federal inmate, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking the application of ten months of "jail time credit" to his sentence. ECF 1. Warden Carter filed a response and motion to dismiss the petition, or in the alternative, for summary judgment. ECF 5. Ewing has opposed the motion. ECF 6. Having reviewed the petition, response, and related filings, the Court finds that no hearing is necessary. Rules 1(b), 8, *Rules Governing Section 2254 Cases in the United States District Courts*; D. Md. Local R. 105.6. For the reasons set forth below, the Court will treat Respondent's motion to dismiss, or in the alternative, for summary judgment as one to dismiss and grants the motion.

**I.   BACKGROUND**

The Lorain County Court of Common Pleas for Ohio sentenced Ewing, on March 21, 2019, to a twelve-month term of imprisonment for a number of drug related offenses. ECF 5-1, at 2 ¶ 3 (declaration of Ronald Gandy, management analysist at the Designation and Sentence Computing Center); ECF 5-3, at 5 (Docket for Case No. 17CR096472). Ewing was ordered to surrender on or before May 20, 2019, for service of this sentence. ECF 5-1, at 2 ¶ 3; ECF 5-3, at 4. However, on April 3, 2019, before he reported, Ewing was arrested in Lorain County, Ohio, for: (1) Violation

of Probation in Case No. 16CR093548; (2) Contempt of Court in Case No. 17CR096472; and (3) numerous new drug trafficking and related offenses in Case No. 17CR096680. ECF 5-1, at 3 ¶ 5; ECF 5-5, at 7 (Docket for Case No. 16CR093548); ECF 5-6, at 5–6 (Docket for Case No. 17CR096680). The violation of probation (Case No. 16CR093548) was discharged with no action; Ewing was released on bond on April 16, 2019. ECF 5-1, at 3 ¶ 6; ECF 5-5, at 7.

On April 24, 2019, Ewing was sentenced by the Lorain County Court of Common Pleas to a two-year term of imprisonment in Case No. 17CR096680, to run consecutive to Case No. 17CR096472, for a total term of three years of imprisonment. ECF 5-1, at 3 ¶ 7; ECF 5-6, at 5–6. The state court directed Ewing's sentence begin on April 24, 2019, and Ewing was granted thirty days of prior custody credit. ECF 5-1, at 3 ¶ 7; ECF 5-6, at 5–6.

On June 5, 2019, Ewing was released to the temporary custody of the United States Marshal Service ("USMS"). ECF 5-1, at 3–4 ¶ 8; ECF 5-7 (USM-129 Form for Petitioner). On January 27, 2020, while still in the temporary custody of the USMS, Ewing was sentenced by the United States District Court for the Northern District of Ohio to a sixty-month term of imprisonment for Distribution of Cocaine. ECF 5-1, at 4 ¶ 9; ECF 5-8, at 3 (Judgment in Case No. 1:19CR321-001). The federal sentence was to run concurrent with the sentences in Lorain County Court of Common Pleas Case Nos. 17CR096472 and 17CR096680. ECF 5-1, at 4 ¶ 9; ECF 5-8, at 3. On January 28, 2020, Ewing was returned to state custody to complete the state sentence. ECF 5-1, at 4 ¶ 10; ECF 5-7.

Upon completion of his state sentence, Ewing was released to the primary custody of the USMS on March 23, 2022. ECF 5-1, at 4 ¶ 11; ECF 5-7; ECF 5-9 (Ohio Department of Rehabilitation and Correction Offender Detail for Petitioner).

Ewing's federal sentence was computed and marked as commencing on January 27, 2020, the date the federal sentence was imposed. ECF 5-1, at 4 ¶ 12; ECF 5-10, at 3 (Sentencing Monitoring Computation Data Sheet). Ewing was awarded prior custody credit for April 3, 2019, through April 16, 2019. ECF 5-1, at 4 ¶ 12; ECF 5-10, at 3. His projected statutory release date was computed as April 17, 2024, with an early release date computed as October 4, 2023. ECF 5-1, at 4 ¶ 12; ECF 5-10, at 3.

On May 20, 2022, Ewing filed a form seeking the award of jail credits, arguing that since his federal sentence was to run concurrent to his state sentence, he was entitled to credit toward his federal sentence for the time he served in state custody before his federal sentence was imposed. ECF 1-1, at 6. Ewing was advised that his sentence was reviewed and no change in the calculation would be made as he was not entitled to the credit sought. *Id.* at 7. He was specifically advised that despite his sentence running concurrently, his federal sentence could not commence until it was imposed. *Id.*

Ewing did not file a formal administrative remedy regarding his claim. ECF 5-12 (Administrative Remedy Retrieval for Petitioner). Ewing acknowledges that he did not exhaust his available administrative remedies prior to filing his petition. ECF 6, at 4. In addition to filing the request for informal resolution on May 20, 2022, Ewing explains that he filed a second request for informal resolution on September 29, 2022, which was also denied. *Id.* Ewing then determined that "the Bureau lacks the ability or competence to resolve the instant request." *Id.* Ewing cites authority for waiver of the exhaustion requirement under certain circumstances, including exigency and futility. *Id.* at 5. He states that he did not have time to file further appeals before the expiration of his sentence and that exhaustion would be futile because the Bureau of Prisons ("BOP") already determined he is not entitled to the relief sought. *Id.* at 6.

Respondent argues that Ewing failed to exhaust his administrative remedies as required and that he has been awarded all the prior custody credit he is due. ECF 5.

Ewing was projected to be released on April 17, 2024. *See* ECF 5-1, at 4 ¶ 12; ECF 5-10, at 3. The undersigned consulted the BOP inmate locator and confirmed that he was released from custody on October 25, 2023. *See Find an Inmate*, Federal Bureau of Prisons, www.bop.gov/inmateloc/ (last accessed September 13, 2024). Because Ewing is now released and on supervised probation, ECF 5-8, at 3, the Court must determine whether his petition presents a live case or controversy. Even assuming without argument that Ewing's claim for relief is not moot, it will be dismissed due to a lack of administrative exhaustion.

## II.   DISCUSSION

### A. Mootness

The authority is conflicted on whether a petitioner's release from prison renders their habeas petition for incorrect time credit calculation moot. On the one hand, the Fourth Circuit has held that overserving the custodial portion of a sentence cannot be remedied via, for instance, the shortening of a supervised release period. *Jones v. Bolster*, 850 F. App'x 839, 839 (4th Cir. 2021) (per curiam) (holding petitioner's request for the restoration of his good-time credits was "moot because any time he allegedly overserved cannot be applied to shorten his supervised release term") (citing *United States v. Jackson*, 952 F.3d 492, 498 (4th Cir. 2020)).

On the other hand, "[q]uestions about banked time [ ] arise in the context of supervised release." *Jackson*, 952 F.3d at 498. The "BOP has created extensive regulations concerning its duty to calculate sentences, including the treatment of banked time." *Id.* Among other things, BOP's regulations provide that "[a]ny prior custody time spent in official detention after the date of offense that was not awarded to the original sentence or elsewhere shall be awarded to the

4

revocation term" when a defendant is sentenced to a term of incarceration for violating his supervised release. *Id.* (quoting BOP Program Statement § 5880.28, Sentence Computation Manual-CCCA of 1984 (1999) at 1–69). Thus, a determination that the petitioner overserved time in incarceration would be banked, or credited to him, *only* if he were to violate the conditions of his supervised release *and* be sentenced to serve a term of incarceration as a penalty.

This conclusion is, however, in tension with the idea that courts are to presume petitioners are not going to break the law or violate terms of their supervisory release. *O'Shea v. Littleton,* 414 U.S. 488, 497 (1974) ("[W]e are . . . unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws. We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction."). Additionally, this conclusion clashes with the idea that the injury must be concrete, and not merely speculative. *Spencer v. Kemna,* 523 U.S. 1, 15 (1998) (rejecting collateral consequences exception's application to a parole violation on the basis that the parolee may commit a different crime in the future and have less favorable parole opportunities); *Ware,* 2023 WL 4855308, at *3 ("Mere conjecture . . . that the prisoner may return to the first prison and again face the alleged wrong is not sufficient to meet the mootness exception." (quoting *Owens v. FCI Beckley,* Civ. No. 5:12-03620, 2013 WL 4519803, at *7 (S.D. W. Va. Aug. 27, 2013))). The Court need not address this tension in the present case since, even assuming that Ewing's time crediting claim is not moot, it nevertheless fails for a lack of administrative exhaustion.

### B. Administrative Exhaustion

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, meaning exhaustion is not a jurisdictional prerequisite to bringing a § 2241 habeas petition, courts

5

nevertheless apply a judicial exhaustion requirement "in the absence of exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Timms v. Johns*, 627 F.3d 525, 530–31 (4th Cir. 2010) (quotations and citation removed). This exhaustion requirement recognizes that "prudential concerns, such as comity and the orderly administration of criminal justice, may require a federal court to forgo the exercise of its habeas corpus power." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation and internal quotation marks omitted); *see also Boumediene v. Bush*, 553 U.S. 723, 793 (2008). "Failure to exhaust [prior to filing a § 2241 petition] may only be excused upon a showing of cause and prejudice." *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (citing *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001)).

Ewing concedes he did not exhaust his administrative remedies before filing his petition. ECF 6, at 4. He asserts, however, that the then-imminent expiration of his sentence and his belief that the BOP had already determined his sentence was properly calculated constitute exceptional circumstances excusing the lapse and that the Court should waive any exhaustion requirement. *Id.* at 6. Ewing commenced the informal administrative remedy process in May 2022—two months after being transferred to federal custody—and filed a second attempt at informal resolution on September 29, 2022. ECF 1-1, at 6; ECF 6-1, at 2. His computation review request was denied.[1] ECF 1-1, at 7; ECF 6-1, at 3. While Ewing argues he did not need to pursue his administrative remedies further after the denial because he believed such an effort would not be successful and because he would be released before resolution of the administrative remedy process, ECF 6, at 6, such circumstances are not sufficient to warrant waiver of the exhaustion requirement. What's

---

[1] The date of the denial letter appears to be June 2, 2022. *See* ECF 1-1, at 6–7. It is not clear whether Petitioner received a response to the September 29, 2022 informal resolution request prior to filing the instant petition on November 21, 2022.

6

more, Ewing does not put forth any allegations explaining the delay in filing the instant petition after his initial request was denied.

This Court has previously found that "[u]nless the agency is certain to rule adversely, . . . a petitioner's unsupported prediction of failure does not excuse his lack of administrative exhaustion."[2] *Wright v. Warden, FCI-Cumberland*, Civ. No. RDB-10-671, 2010 WL 1258181, at *1 (D. Md. Mar. 24, 2010) (citing *Thetford Prop. IV Ltd. P'ship v. U.S. Dep't of Hous. & Urban Dev.*, 907 F.2d 445, 450 (4th Cir. 1990)). Further, under the regulations, the entire administrative exhaustion process takes about four months. *See id.* at *2 n.4 (citing 28 C.F.R. § 542.14 to 542.15; *Larue v. Adams*, 2006 WL 1674487, at *9 (S.D. W. Va. June 12, 2006)). Thus, had Ewing pursued the administrative process after his initial informal review request was denied, based on response deadlines prescribed by regulation, the administrative review process would have been resolved before his projected release date. *See id.*; *see also* ; *Larue v. Adams*, 2006 WL 1674487, at *9 n.11.

While the Fourth Circuit has not addressed exhaustion under these circumstances, courts in other circuits have found that the exhaustion requirement is not excused because of a petitioner's impending release from custody when a petitioner's own lack of timeliness contributed to the time constraint. *See Overshown v. Upton*, 466 F. App'x 361, 361 (5th Cir. 2012) (affirming the district court's dismissal for failure to exhaust and finding that a petitioner challenging the BOP's calculation of credit towards his federal sentence of time spent in state custody had not shown futility and prejudice to warrant excusing the exhaustion requirement); *Richmond v. Scibana*, 387

---

[2] An adverse ruling is "certain" upon a "a clear showing that an administrative agency has taken a hard and fast position." *Thetford Properties IV Ltd. P'ship v. U.S. Dep't of Hous. & Urb. Dev.*, 907 F.2d 445, 450 (4th Cir. 1990). Otherwise, "a litigant's prognostication that he is likely to fail before an agency is not a sufficient reason to excuse the lack of exhaustion." *Id.* Ewing has not shown that an adverse ruling was certain here.

F.3d 602, 604 (7th Cir. 2004) (stating "[a] prisoner cannot manufacture exigency by tarrying," in response to a petitioner's contention that "[l]ooming deadlines dates excuse[d] exhaustion" in a habeas petition); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760–62 (3d Cir. 1996) (finding a procedural default that precluded review of § 2241 claims where a petitioner failed to complete the administrative remedy process due to the petitioner's own "dilatoriness"; finding no cause and prejudice that would excuse default); *see also Sutton v. Moser*, No. 2:19-CV-210, 2019 WL 2743959, at *3–4 (W.D. Pa. July 1, 2019) (finding a petitioner is not excused from exhaustion "simply because he is approaching his projected release date and may not finish his administrative appeal before a potential habeas claim would become moot"); *Allah v. Rechtenwald*, Civ. No. 15-267, 2016 WL 6081524, at *3 (W.D. Pa. Aug. 19, 2016) (recommending rejection of an argument that "the exhaustion requirement [ ] be excused because the administrative remedy process could not be completed prior to" a certain date), *report and recommendation adopted*, No. 1:15-CV-00267-BR-SPB, 2016 WL 6080363 (W.D. Pa. Oct. 17, 2016); *Amirnazmi v. Scism*, No. 3:11-CV-273, 2011 WL 5854579, at *3, *7 (M.D. Pa. Nov. 21, 2011) (adopting Magistrate Judge's finding that "exhaustion is not rendered futile simply because an inmate grieving under the Second Chance Act anticipates that he will be unsuccessful in his administrative appeals before the twelve (12) month release mark"). "Typically, courts have not applied the futility exception based on a timeliness argument." *Ortiz v. Zickefoose*, No. CIV.A. 10-6767 NLH, 2011 WL 6140741, at *4 (D.N.J. Dec. 8, 2011). Some courts have opined specifically that "time restriction" arguments like Ewing's should be denied "because they allow prisoners to engage in the self-serving strategy of waiting until it is too late to engage in the administrative remedy process, and then argue that there is insufficient time for those remedies to run their course." *Romano v. Warden, FCI Fairton*, No. CV-23-1052 (CPO), 2023 WL 3303450, at *5 (D.N.J. May 8, 2023); *see also Tetterton v. Warden,*

*FCI Fort Dix*, No. CV 23-1394 (CPO), 2023 WL 4045086, at *6 (D.N.J. June 16, 2023) (same); *Jackson v. Knight*, No. CV 23-2057 (CPO), 2023 WL 4045050, at *3 (D.N.J. June 16, 2023) (same).

Moreover, exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). Exhaustion is "normally desirable" in order to allow for the development of a factual record and to permit the agency an opportunity to exercise its discretion or apply its expertise, *McKart v. United States*, 395 U.S. 185, 193–94 (1969), as well as to allow the agency to correct its mistakes, which conserves judicial resources at the same time, *McCarthy*, 503 U.S. at 145–46. Here, the BOP has only been given the chance at an informal resolution of Ewing's claims rather than the four opportunities required under the administrative remedy process to review its decision. *See* 28 C.F.R. §§ 542.10–542.19. As such, it has not been given full opportunity to correct potential mistakes, if any, and the record is incomplete. Additionally, the full weight of the BOP's expertise has not been applied, as each of the four steps of the administrative remedy process submits an inmate's claim to an increasing level of authority within the BOP, culminating with review by the General Counsel. *Id.*

Without facts concerning Ewing's reasons for abandoning the administrative remedy process while there was still sufficient time for resolution before his sentence was set to end and his unsupported belief that the use of the administrative remedy process would be futile, the Court finds there is no basis for waiver of the exhaustion requirement.

Because the petition will be dismissed on exhaustion grounds, the Court does not decide Respondent's remaining argument.

## III. CONCLUSION

For the reasons set forth above, the Court will construe Respondent's motion to dismiss, or in the alternative, for summary judgment, ECF 5, as one to dismiss and GRANT the motion. The petition will be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies. A separate order follows.

September 25, 2024  
Date

/s/  
Brendan A. Hurson  
United States District Judge